UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARBONCHARGE TECHNOLOGIES LLC,

                Plaintiff,

-against-

MARYLOU TALAFOUS-FAVETTA, individually and in her capacity as Executrix of The Estate of Dino A. Favetta,

                Defendants.

**OPINION AND ORDER**

24-CV-00361 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Before the Court is a motion to intervene under Federal Rules of Civil Procedure 24(a) and 24(b), filed by EnRevo Industries LLC and EnRevo Phytron LLC (together, "EnRevo" or "Proposed Intervenors"). EnRevo filed its motion on October 31, 2024, in accordance with the briefing schedule set by the Court. (Doc. 40; Doc. 41, "EnRevo Br."; Doc. 42). CarbonCharge Technologies, LLC ("Plaintiff") and Marylou Talafous-Favetta ("Mrs. Talafous"), in her individual capacity, and the Estate of Dino A. Favetta (the "Estate," and together with Mrs. Talafous, "Defendants"), in a joint memorandum of law as directed by the Court, opposed the motion (Doc. 47, "Pty. Br."), and the motion was fully submitted upon the filing of EnRevo's reply brief (Doc. 53).

For the reasons set forth below, the motion to intervene is DENIED.

## BACKGROUND

The facts recited herein are drawn from the Complaint (Doc. 1, "Compl."), unless otherwise indicated, and are taken as true for purposes of this motion. On October 10, 2011, U.S. Provisional Patent Application No. 61/545,229 (the "'229 Provisional Application") was filed, listing three co-inventors: Dino Favetta of Cedar Knolls, New Jersey (the "Decedent"), Dirk-Jan

1

Rosse of Millbrook, New York ("Rosse"), and James C. Slattery of Staten Island, New York ("Slattery"). (*Id.* ¶¶ 22, 23). On October 10, 2012, U.S. Patent Application No. 13/648,828 (the "'828 Application") was filed. (*Id.* ¶ 19). On October 25, 2016, U.S. Patent No. 9,478,324 entitled "Systems and Methods for Producing Biochar-Based Products," issued from the '828 Application (the "'324 Patent"). (*Id.* ¶ 18).

On February 11, 2016, the Decedent, signing as Chief Executive Officer and Founding Member of Michrinik Technologies LLC ("Michrinik"), entered into a Technology Development and Commercialization Agreement with EnRevo ("February Development Agreement"), whereby, *inter alia*, Michrinik assigned to EnRevo the commercial, usage, and intellectual property rights to the contents of the '828 Application; and any patent issued therefrom to which the Decedent was entitled as co-inventor, and in which he had assigned to Michrinik. (Doc. 29-1). Annexed to the February Development Agreement as Appendix D is an Intellectual Property Rights Assignment Agreement dated February 11, 2016, in which the Decedent irrevocably assigned and transferred his commercial, usage, and intellectual property rights to the contents of the '828 Application and any patent issued therefrom to Michrinik. (*Id.* at 26).

At the time of the February Development Agreement and purported assignment from Decedent to Michrinik, Michrinik had not yet been formed as an LLC. (Doc. 29-2). On August 29, 2016, EnRevo and Michrinik entered another Technology Development and Commercialization Agreement ("August Development Agreement"). (Doc. 29-4). The August Development Agreement specifies that the Decedent *would* assign his rights in the '828 Application and any patent issued therefrom to Michrinik. *Id*. Michrinik in turn agreed to permit EnRevo to, *inter alia*, develop, commercialize, use, and market products, technologies, and intellectual property using content from the '828 Application and any patent issued therefrom. (*Id.*). The August Development

Agreement does not contain any executed assignment from Decedent to Michrinik; the assignment document annexed as Appendix C to the August Development Agreement is blank and was not signed. (*Id.* at 34). It also contains a merger clause that states: "This Agreement represents the entire current agreement between the Parties, replacing and rendering null and void any prior agreement or understanding of the Parties . . . ." (*Id.* § 6(B)).

On September 26, 2016, EnRevo and Michrinik entered another Technology Development and Commercialization Agreement (the "License Agreement"). (Doc. 29-5). The License Agreement is similar in material respects to the August Development Agreement; and, like the August Development Agreement, the License Agreement does not contain any executed assignment from Decedent to Michrinik. (Doc. 29-6 at 18).

On November 6, 2018, U.S. Patent No. 10,121,563, also entitled "Systems and Methods for Producing Biochar-Based Products," issued from U.S. Patent Application No. 15/334,165 ("the '165 Application"), filed on October 25, 2016, as a continuation of the '324 Patent (the "'563 Patent"). (Compl. ¶¶ 20-21).

On February 16, 2022, Michrinik terminated the License Agreement with EnRevo. (Doc. 31-1 ¶ 13). On or about January 10, 2023, the Decedent died, purportedly retaining co-ownership of the '324 Patent and the '563 Patent (the "Biochar Patents"). (Compl. ¶ 25). On April 5, 2023, assignments from two individual inventors, Rosse and Slattery, were recorded at the United States Patent and Trademark Office ("USPTO"), assigning their rights in the Biochar Patents to Plaintiff. (*Id*. ¶ 24). There are no other assignments of record concerning the Biochar Patents which were filed with the USPTO. *See* 35 U.S.C. § 261. (Doc. 29-7).

Plaintiff, on January 17, 2024, commenced the instant action seeking to eliminate the Decedent as an inventor on the Biochar Patents. Plaintiff sued the Decedent's widow, Mrs.

Talafous, in both her individual capacity and in her capacity as Executrix of the Decedent's estate. Defendants initially sought to move to dismiss the Complaint. (Doc. 11). Following a pre-motion conference held on April 9, 2024, however, Defendants filed an answer and counterclaim. (Doc. 18). After the parties commenced discovery and appeared before Magistrate Judge Reznik for a settlement conference, the Court was notified that they had reached a settlement in principle. (*See* May 28, 2024 Entry). The Court then dismissed the action without prejudice to reopening within sixty days of the Court's order. (Doc. 22). Approximately one month after the case was closed, on July 2, 2024, EnRevo's counsel filed a pre-motion letter in anticipation of its motion to intervene (Doc. 24), and subsequently filed the extant motion to intervene (Doc. 41; Doc. 42).

## STANDARD OF REVIEW

I. Intervention as of Right

EnRevo seeks to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). "The proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. State of New York*, No. 19-CV-11285, 2020 WL 5658703, at *5 (S.D.N.Y. Sept. 23, 2020).[1] To prevail on a motion to intervene as of right under Rule 24(a)(2), a movant must establish:

> (1) the motion is timely; (2) it asserts an interest relating to the property or transaction that is the subject of the action; (3) without intervention, disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) its interest is not adequately represented by the other parties.

*CWCapital Cobalt Vr Ltd. v. U.S. Bank Nat'l Ass'n*, 790 F. App'x 260, 262 (2d Cir. 2019). The Second Circuit has "underscored that a failure to satisfy *any one* of these four requirements is a

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

4

sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (emphasis in original); *see also New York SMSA Ltd. P'ship v. Town of Carmel*, No. 19-CV-10793, 2022 WL 12064663, at *2 (S.D.N.Y. Oct. 20, 2022). "While accepting as true the non-conclusory allegations of the motion, courts applying Rule 24 must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016). Furthermore, "except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *Oneida Indian Nation of Wisc. v. State of New York*, 732 F.2d 261, 265 (2d Cir. 1984).

II. Permissive Intervention

EnRevo alternatively moves for permissive intervention under Federal Rule of Civil Procedure 24(b). Rule 24(b) provides that "on timely motion, the Court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Courts consider "substantially the same factors" when deciding whether to permit permissive intervention as for interventions as of right. *Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)*, 320 F.3d 291, 300 n.5 (2d Cir. 2003). Permissive intervention lies within the Court's "broad discretion," *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005). The Court, in exercising that discretion, "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

**ANALYSIS**

I. Intervention as of Right

The Court turns first to EnRevo's motion to intervene as of right under Rule 24(a)(2) and considers each of the four elements seriatim.

A. <u>Timeliness of the Motion to Intervene</u>

The court may consider, in assessing the timeliness of a motion to intervene, the following factors: "(1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000). "A district court has broad discretion in assessing the timeliness of a motion to intervene, which defies precise definition." *Id.* With respect to the notice factor, "Rule 24(a) requires courts to measure timeliness from the moment when the applicant had actual or constructive notice of its unrepresented interest." *Floyd v. City of New York*, 302 F.R.D. 69, 86 (S.D.N.Y. 2014).

EnRevo learned of the pendency of this action in March 2024. (Doc. 31-1 ¶ 2). It affirmatively accessed PACER and monitored the docket. (*Id.* ¶ 4). It was regularly in communication with Defendants about this lawsuit. (*Id.* ¶¶ 3, 5-7). EnRevo knew in early April 2024 that the matter was referred for settlement. (*Id.* ¶ 4). EnRevo did not seek to intervene or otherwise become involved in the suit until approximately three months after it had actual knowledge of the suit; and after Defendants' counsel sought EnRevo's signature on a settlement document which EnRevo believed would "waive its rights under the License Agreement." (Doc. 41 at 10 (citing Doc. 31-1 ¶ 8; Doc. 42-1)). EnRevo states that it concluded that, when the parties refused to share the terms of their proposed settlement in June 2024, that "Defendants were not adequately representing EnRevo's interests in the settlement negotiations . . . . For these reasons, EnRevo filed its pre-motion letter on July 2, 2024 in which it requested a conference further to its interest in briefing a Rule 24 motion to intervene." (Doc. 31-1 ¶¶ 11-12). EnRevo believes its application was timely, as it was made "promptly after it learned that the proposed settlement

6

between CarbonCharge and the Defendants threatened its interests." (Doc. 41 at 9 n.1). The parties contend that the delay was strategic on EnRevo's part, made in an effort to upend the settlement.

EnRevo was unquestionably informed specifically of the controversy in March 2024 and consulted with Defendants throughout the litigation process. EnRevo knew in April 2024 of the parties' position that Defendants—specifically, Mrs. Talafous—owned whatever rights the Decedent had to the Biochar Patents after Decedent's death. (*See* Doc. 18 ¶ 7 (admitting that "any interest that [the Decedent] had in the Biochar Patents passed to [Mrs. Talafous] under [the Decedent's] Last Will and Testament.")). EnRevo knew from its discussions with Defendants that settlement was being negotiated between April and June 2024. Before it finally raised its hand to intervene, EnRevo "hid in the tall grass" until it received a document to sign in connection with the parties' proposed settlement at the end of June 2024, a month after this case was closed in light of the parties' settlement in principle. *MasterCard Int'l Inc. v. Fed'n Inernationale de Football Ass'n*, No. 06-CV-03036, 2006 WL 3065598, at *2 (S.D.N.Y. Sept. 26, 2006), *aff'd*, 471 F.3d 377 (2d Cir. 2006).

The parties will be prejudiced by EnRevo's delayed application in that "this late intervention would potentially derail the settlement and prejudice the existing parties, who had been engaging in settlement negotiations for several months." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001). EnRevo's argument is that the prejudice to it if it is not permitted to intervene is greater than any prejudice to the parties, because its "business depends on the Licensing Agreement in which [the Decedent] assigned his rights in the Legacy Patent to Michrinik, which in turn, licensed those rights exclusively to EnRevo. . . . Those rights will be lost if this Court grants Plaintiff's claims for a declaration that [the Decedent] is not an inventor of the Legacy Patent." (Doc. 41 at 10). This argument assumes that Defendants would not adequately

defend against Plaintiff's claims that the Decedent should not be listed as an inventor on the Biochar Patents. Such argument is pure speculation and belied by the existing record here. Put simply, "[EnRevo's] absence from the litigation is not the cause of any harm [it] may suffer if [Plaintiff] prevails in this lawsuit." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 391 (2d Cir. 2006). Indeed, EnRevo's lack of involvement concerning their "rights" to use the '324 Patent over the months and years preceding and following the commencement of this action speaks volumes here. EnRevo has made clear through its conduct that its instant application is untimely, by waiting to intervene until a settlement had been reached and this case was closed.

Accordingly, under these circumstances, EnRevo's motion to intervene is untimely.

B. EnRevo's Interest in the Subject Matter of this Action

Even assuming EnRevo's motion was timely, it has not established a sufficient interest in the subject matter of this lawsuit to satisfy the test for intervention as of right. For an interest to be cognizable under Rule 24(a)(2), it must be "direct, substantial, and legally protectable." *Wash. Electric Coop., Inc. v. Mass. Mun. Wholesale Electric Co.*, 922 F.2d 92, 97 (2d Cir. 1990). On the other hand, "an interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Id.*

As an initial matter, EnRevo does not allege any interest in the '563 Patent, one of the two Biochar Patents at issue in this suit. It therefore has no interest in this action insofar as it seeks relief in connection with the '563 Patent.

With respect to the '324 Patent, EnRevo contends it has an important interest, in that the action relates to the validity of its license or benefits thereunder. (Doc. 41 at 12-13). This characterization is a stretch too far. This lawsuit seeks to remove the Decedent as an inventor from

the '324 Patent, and for a declaration that neither Mrs. Talafous nor any other of Decedent's heirs is a co-owner of the Biochar Patents. (*See generally* Compl.). EnRevo, on the other hand, seeks to litigate its claims that it has a valid license (which was not terminated) from Michrinik—an entity that is not a party to this lawsuit. EnRevo's interest, if any, in this lawsuit is its purported interest as a licensee of the '324 Patent, which was contingent on an assignment from the Decedent to Michrinik. In other words, EnRevo's interest is not in the subject matter of this action, but in its potential claim against Michrinik under the License Agreement. EnRevo's absence from this lawsuit would not prevent the Court from granting complete relief between Plaintiff and Defendants. EnRevo is simply not a necessary party to the instant litigation. *MasterCard*, 471 F.3d at 389 ("First, even assuming Visa's motion was timely, if a party is not 'necessary' under Rule 19(a), then it cannot satisfy the test for intervention as of right under Rule 24(a)(2).").

Furthermore, the License Agreement, which is governed by New Jersey law, contains a binding arbitration clause. (*See* Doc. 29-6 §§ 11, 12). Thus, even if EnRevo were permitted to intervene in this action, its claims under the License Agreement are subject to mandatory arbitration.

EnRevo's reliance on the non-binding case *Gen. Elec. Co. v. Wilkins*, No. 10-CV-00674, 2011 WL 533549 (E.D. Cal. Feb. 11, 2011), does not alter this Court's analysis. The proposed intervenor there demonstrated a protectable interest and did not seek to litigate the validity of its license with Defendant. *Id.* at *2. If anything, under these circumstances, EnRevo may have a breach of contract claim against Michrinik for which the parties are required to arbitrate; but that hypothetical claim is ancillary to the patent claims against Defendants in this suit. EnRevo's motion fails to establish a sufficiently direct interest in the sole question involved in this litigation—the Decedent's inventorship of the Biochar Patents.

C.  Impairment of EnRevo's Interest Without Intervention

An applicant for intervention must show that "the disposition may as a practical matter impair or impede their ability to protect their interests." *New York Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975). EnRevo argues that if Plaintiff prevails on its claims in this action, it will destroy EnRevo's rights under the License Agreement. (Doc. 41 at 13-14). As a practical matter, it may be that an adjudication that Plaintiff is the sole owner of the technology underlying the '324 Patent might destroy EnRevo's rights under its license from Defendant. *Cf. Wilkins*, 2011 WL 533549, at *3. "That means the litigation—at the merits phase—may impair [EnRevo's] interest." *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 800 (2d Cir. 2022). The record here on that score, however, is not clear at all. It could be that EnRevo's interests—if any—have years ago been terminated. Thus, while this factor tends to militate in favor of intervention as disposition of the action may impair or impede EnRevo's ability to protect its interest in the '324 Patent (if any), the Court is left with the firm conviction that EnRevo, by its conduct, has not preserved its rights in this action to succeed on its impairment argument.

D.  Adequacy of Defendants' Representation of EnRevo's Interest

"While the burden to demonstrate inadequacy of representation is generally speaking minimal," the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). Where the putative intervenor and named party have the same ultimate interest, "the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* "A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply

because it has a motive to litigate that is different from the motive of an existing party." *NRDC, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62–63 (2d Cir. 1987). "So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented." *Id.* at 62.

EnRevo has failed to rebut the presumption of adequate representation by Defendants. EnRevo and Defendants share the same goal: maintaining Decedent as an inventor in the Biochar Patents. *See New York v. United States Dep't of Health & Hum. Servs.*, No. 19-CV-04676, 2019 WL 3531960, at *5 (S.D.N.Y. Aug. 2, 2019). EnRevo's concern is that its purported interest in the '324 Patent will not be protected in any settlement that is achieved by the parties. This concern does not render the Proposed Intervenors' position adverse to Defendants. *See ExteNet Sys. Inc., v. Vill. of Lake Success*, No. 19-CV-03471, 2020 WL 1862948, at *3 (E.D.N.Y. 2020) ("The mere possibility that a party may at some future time enter into a settlement cannot alone show inadequate representation."); *New York SMSA Ltd. P'ship v. Town of Philipstown*, No. 18-CV-01534, 2018 WL 6619737, at *2 (S.D.N.Y. Dec. 18, 2018) ("[T]hat the Town may settle the case on terms of which the proposed intervenors do not approve . . . . does not alone render the Town's and the proposed intervenors' interests adverse."); *see also United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir. 1990) (proposed intervenors' disagreement with party over trial strategy does not support intervention as of right). Simply put, EnRevo has not established that under these circumstances, Defendants will not adequately protect their interests in preventing Decedent's elimination from the Biochar Patents.

Accordingly, because "a failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application," *Floyd*, 770 F.3d at 1057, EnRevo's motion to intervene as of right is denied.

II.   Permissive Intervention

The Court, in exercising its broad discretion, declines to permit intervention under Rule 24(b). As set forth *supra*, EnRevo's interests are aligned with Defendants' interests in this action and EnRevo has failed to show that Defendants have inadequately represented those aligned interests. Allowing EnRevo to prosecute its potential claims against Michrinik in this action—in which Michrinik is not a party, under an agreement that requires arbitration and which may or may not have been terminated—as well as purportedly defend the Decedent's interests alongside Defendants "would add an unwelcome layer of complexity outweighing any advantage." *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 468 (S.D.N.Y. 2000).

Whether Decedent assigned his interest to Michrinik, whether the License Agreement is valid, whether the License Agreement was terminated, what claims EnRevo could properly bring against Plaintiff (as opposed to Michrinik, which is not a party to this action), are unresolved issues that are ancillary to the instant proceeding. "Resolving those issues would unnecessarily complicate and delay this litigation." *Prophet Mortg. Opportunities, LP v. Christiana Tr. as Tr. of RBSHD 2013-1 Tr.*, No. 22-CV-09771, 2023 WL 3570040, at *4 (S.D.N.Y. May 18, 2023). Accordingly, the motion to intervene is denied in its entirety.

## CONCLUSION

For the reasons set forth above, EnRevo's motion to intervene under Federal Rules of Civil Procedure 24(a) and 24(b) is denied. Proposed Intervenors' alternative request to stay this action (joined by Plaintiff) is denied.

The time to move to reopen this action is extended until 30 days after the date of this Order. (*See* Doc. 36).

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 41.

SO ORDERED.

Dated: White Plains, New York
September 12, 2025

PHILIP M. HALPERN
United States District Judge